Michael R. Lozeau (CA State Bar No. 142893)
Brian B. Flynn (CA State Bar No. 314005)
LOZEAU DRURY LLP
1939 Harrison Street, Suite 150
Oakland, CA 94612
Tel: (510) 836-4200
Fax: (510) 836-4205
E-mail: michael@lozeaudrury.com
       brian@lozeaudrury.com

M. Benjamin Eichenberg (CA State Bar No. 270893)
SAN FRANCISCO BAYKEEPER
1736 Franklin Street, Suite 800
Oakland, CA 94612
Tel: (510) 735-9700
Fax: (510) 735-9160
E-mail: ben@baykeeper.org

Attorneys for Plaintiff
SAN FRANCISCO BAYKEEPER

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, a non-profit corporation,<br><br>                    Plaintiff,<br>          v.<br>UNITED STATES FISH AND WILDLIFE SERVICE, a United States Government Agency; MARTHA WILLIAMS, in her official capacity as Acting Director of U.S. Fish and Wildlife Service; and DEB HAALAND, in her official capacity as Secretary of the U.S. Department of the Interior;<br><br>                    Defendants. | Civil No. 3:21-cv-02566-JCS<br><br>PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE OF WESTLANDS WATER DISTRICT<br><br>Judge: Honorable Joseph C. Spero<br>Date: June 11, 2021<br>Time: 9:30 a.m.<br>Crtrm: F, 15th Floor |

## I. INTRODUCTION

The Longfin Smelt (Spirinchus thaleichthys) (San Francisco Bay-Delta distinct vertebrate population segment) ("Longfin Smelt DPS") is on the brink of extinction and has been awaiting protective action by the United States Fish and Wildlife Service ("Service") since it was petitioned for listing under the Endangered Species Act (ESA) in 1993. Every year, the Service decides to put off its listing decision. The goal of Westlands Water District's ("Westlands") Motion to Intervene is to delay this case, and thus further delay this decision. Such delay confounds the purpose of the ESA, the interests of both the Service and Baykeeper in a swift resolution to this case, and the interest of this Court in judicial economy.

Moreover, because any future effect on Westlands' interest stemming from this case is conditional on a series of future discretionary actions by the Service, those interests fail to satisfy the requirements of Federal Rule of Civil Procedure 24. Westlands does not identify any direct, immediate, or harmful effect to its contractual rights from Baykeeper's challenge. Without such effect, Westlands cannot demonstrate that it has a "significantly protectable" interest relating to Baykeeper's claim that the United States Fish & Wildlife Service ("Service") abused its discretion in determining that (1) proposing and promulgating a final regulation implementing the long-pending petition to list the Longfin Smelt is precluded; or (2) it was making expeditious progress on adding or removing species from the lists. 16 U.S.C. § 1533. Nor is there any practical impairment of Westlands' water contracts by Baykeeper's claim given critical intervening decisions by the Service that would be necessary for Westlands' predicted impacts to come true. Westlands' interests are thus too attenuated a foundation upon which to grant intervention.

## II. FACTUAL BACKGROUND

Baykeeper's lawsuit challenges the Service's determination that the Longfin Smelt DPS warranted listing as either an endangered or threatened species under the ESA but that such listing was precluded by higher priority listing actions and that expeditious progress was being made to add or remove species from the endangered and threatened species lists. Complaint, p. 1, ¶ 2. The Longfin Smelt DPS has been awaiting a listing determination for decades, and the interests of the public are not

served by continuing regulatory uncertainty.

**III. STATEMENT OF THE ISSUES TO BE DECIDED (L.R. 7-4(A)(3))**

Whether Proposed Intervenors have demonstrated that they are entitled to intervention as of right pursuant to Rule 24(a), or permissive intervention subject to limitations under Rule 24(b).

**IV. LEGAL BACKGROUND**

The Court applies a four-part test to determine a motion to intervene as of right:

> (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit.

*Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817–18 (9th Cir. 2001). Rule 24(a) is construed liberally in favor of potential intervenors and "guided primarily by practical considerations," not technical distinctions. *Id*. at 818.

"[W]hether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry. No specific legal or equitable interest need be established. It is generally enough that the interest [asserted] is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id* (citation omitted). "There is a sufficient relationship between the interest and a plaintiffs' claims if the 'relief sought by the plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests.'" *Ctr. For Biological Diversity v. U.S. E.P.A.*, No. C13-1866 JLR, 2014 WL 636829, at *3 (W.D. Wash. Feb. 18, 2014), quoting *Conservation Council v. U.S. Forest Service,* 66 F.3d 1489, 1494 (9th Cir. 1995), *abrogated by Wilderness Soc.,* 630 F.3d 1173. See *Ctr. For Biological Diversity v. U.S. E.P.A.*, No. C13-1866JLR, 2014 WL 636829, at *3 (W.D. Wash. Feb. 18, 2014) ("To merit intervention as of right, the interest must be 'direct, non-contingent, substantial and legally protectable'"). "An applicant generally satisfies the "relationship requirement only if the resolution of the plaintiff's claims actually will affect the applicant." *Ctr. for Biological Diversity v. Lubchenco*, No. 09-04087 EDL, 2010 WL 1038398, at *1 (N.D. Cal. Mar. 19, 2010), citing *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

The Court applies a three-part test to determine a motion for permissive intervention. "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id*. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P., Rule 24. Other factors the Court also may consider include, for example, "the nature and extent of the intervenors' interest, … whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977).

## V. ARGUMENT

### A. Westlands Fails to Establish a Significantly Protectable Interest in the Transaction at Issue – USFWS' Determination That Listing the Longfin Smelt Was Precluded.

Westlands claims that its contractual water rights are "directly at stake in the present litigation." Westlands Brief, p. 6. It asserts generally that it's contractual water rights "may be impaired as a result of the outcome of litigation." *Id*. Westlands asserts that "Plaintiff's claims put Westlands' contractual interests squarely at issue by seeking to reduce Westlands' water supply." *Id.* Westlands further claims that "[i]n the event that the federal defendants list the Longfin Smelt DPS under the ESA, CVP operations will almost certainly be subject to further ESA consultation, which may further restrict CVP allocations to Westlands' detriment." *Id*., p. 7. *See* Dec'l of Jose Gutierrez, ¶ 6.

None of these assertions identify any direct, immediate, and harmful effects to Westlands' contractual rights from Baykeeper's challenge to the Service's discretionary determination that a rulemaking determining the listing status of the Longfin Smelt is precluded. Westland's water contracts are not a subject of this action and not "squarely at issue." Nothing in Baykeeper's requested relief seeks "to reduce Westlands' water supply." At best, Westlands can only identify a tenuous, indirect, and contingent interest.

If Baykeeper prevails on its claims that the service's determination is arbitrary and capricious, the resulting relief would remand the 2020 CNOR to the Service to issue a proposed listing rule. Complaint, p. 18, ¶ C (requesting the Court "Set aside the findings of 2020 CNOR regarding the Longfin Smelt DPS and remand to the Service with instructions to immediately issue a proposed listing rule for the Longfin Smelt DPS by a date certain and to adopt a final listing rule for the Longfin Smelt DPS by a date certain…"). *See* 16 U.S.C. § 1533(b)(3)(B)(iii). Nothing in that requested relief seeks to direct the Service to exercise its listing rulemaking in any particular way. It only asks that the Service exercise its discretion to make a final listing determination by a date certain.

As a result, the tenuous route to any future, direct impact on Westlands water contracts has little to do with the relief Baykeeper requests or could obtain as a result of this litigation. Upon remand, the Service would have to prepare a proposed rulemaking. Although the Service has determined in the 2020 CNOR that listing of the Longfin Smelt is warranted, nothing in the Court's order would undermine the Service's discretion to apply the best scientific evidence to propose either to list or not list the Smelt as of that date. Assuming the Service promulgates a rule listing the Smelt, that listing would not alter any of Westland's contracts. Instead, as Westlands concedes, the listing rule would lead to the Service consulting with another entity – the Bureau of Reclamation – regarding that agencies' operation of the Central Valley Project. That future process would presumably result in a biological opinion, which may or may not include conditions affecting Westland's water contracts. This attenuated, contingent route to some future potential effect on Westlands' water contracts does not amount to a relationship with the subject of Baykeeper's action warranting intervention as of right.

In *Ctr. for Biological Diversity v. Lubchenco*, Judge Laporte denied the State of Alaska's motion to intervene as of right in a challenge to a decision by the National Marine Fisheries Service ("NMFS") not to list the ribbon seal as either endangered or threatened under the ESA. The Court ruled that the State could not demonstrate that the relief resulting from a successful challenge to NMFS' listing determination established a significantly protectable interest:

> An unfavorable outcome in this case would not, as Alaska contends, compel a decision listing the ribbon seal, but rather compel Defendants to the engage in listing procedure again, which would not actually affect Alaska's interest in wildlife.

*Ctr. for Biological Diversity v. Lubchenco*, No. 09-04087 EDL, 2010 WL 1038398, at *2 (N.D. Cal.

Mar. 19, 2010). "Although this litigation is a first step in a process that could eventually lead to a change in the final listing decision, any outcome here will not compel a decision listing the ribbon seal." *Id*., p. *3. As Judge LaPorte explained:

> Although Alaska has certainly raised legitimate interests, it has not established the close relationship between those interests and the claims at issue that is required for intervention as of right under Ninth Circuit precedent. Even if Plaintiffs obtain the ruling they seek here, which is not a foregone conclusion, a remand would only compel Defendants to re-analyze the listing decision. The actual decision that might—or might not—adversely affect Alaska's interest would occur only after the Service completed another listing process, a process in which Alaska would be able to participate as provided in ESA. Thus, even though Alaska argues that listing the ribbon seal could affect its management activities ***depending on a chain of contingent events in the future***, Alaska does not have a significant protectable interest in the present litigation as defined by relevant circuit precedent.

*Id*. at *5 (emphasis added). The same is true for Baykeeper's claims – if the Service's precluded determination for the Longfin Smelt is vacated, the Service would then have to proceed to complete a proposed rulemaking and determine whether or not to list the Longfin Smelt. Only once that decision is made, as well as whatever future consultations may be completed, would there be any actual effect on Westlands. Westlands will have multiple potential comment periods (the proposed listing) or judicial review opportunities (future consultations) to ensure any potential future impacts to its water contracts from any future legal shortcomings are vindicated.

Similar attenuated effects led to the denial of intervention as of right by permit holders in *Ctr. For Biological Diversity v. U.S. E.P.A.*, No. C13-1866JLR, 2014 WL 636829 (W.D. Wash. Feb. 18, 2014). That case was brought under the Clean Water Act ("CWA") to challenge the Environmental Protection Agency's decision not to list various ocean waters in Oregon and Washington as impaired by ocean acidification. Like the consultation and incidental take permitting processes that follow the ESA listing process, when waters are listed as impaired pursuant to Section 303(d) of the CWA, 33 U.S.C. § 1313(d), that determination triggers certain obligations of EPA to establish total maximum daily loads and subsequently adjust pollution discharge permits to meet those requirements. 33 U.S.C. § 1313(d). However, the multiple steps necessary to implicate the permit holder's interest in the outcome precluded intervention as of right at the initial stage of whether or not to list the waterbody: "Due to … intervening administrative determinations, the relief sought by plaintiffs does not have the 'direct, immediate' effects upon NPDES permits necessary to justify intervention as of right." *Id*. at p. *5*; see*

*also id*. at \*6 ("Proposed Intervenors' generalized interests in avoiding potentially stricter NPDES permit limitations are simply too remote from the substance of this litigation to merit intervention as of right").

Likewise, in a case seeking to compel regulations under the Clean Air Act, the district court ruled that "the possibility that this lawsuit could lead to more stringent regulations does not constitute a direct, substantial, legally protectable interest in this lawsuit." *Ctr. for Biological Diversity v. EPA*, C–11–06059 YGR, 2012 WL 909831, at \*4 (N.D.Cal. Mar.16, 2012). "A remote interest does not provide for intervention as a matter of right." *Id.*

None of the decisions cited by Westlands ruled that intervention was appropriate where the feared impacts were as attenuated as here.

*Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1083 (9th Cir. 2003) did not involve a motion to intervene, holding that several farmers and the California Farm Bureau had standing to challenge an environmental impact statement prepared for the CalFed Bay-Delta program pursuant to the National Environmental Policy Act ("NEPA"), which included proposals to convert agricultural resources to environmental uses and claims of potential related water shortages for the plaintiffs. The Service's "precluded" determination for the Longfin Smelt challenged by Baykeeper involves no concrete acquisitional decision, let alone a decision to acquire farmland involved in water supply markets.

In *Sw. Ctr. for Biological Diversity v. Berg*, the Court of Appeal overturned the denial of a motion to intervene sought by a construction company and several building trade associations in a case challenging a habitat conservation plan and incidental take permit ("ITP") issued pursuant to Section 10 of ESA addressing vernal pool species in San Diego. 268 F.3d at 814-17. The Court of Appeals held that the developer groups were third party beneficiaries of assurances and approvals set forth in the ITP which the case sought to overturn. *Id*. at 820-21. Members of several intervenors also owned land that already was developed in reliance on the ITP. *Id*. at 821. Westlands does not show any such 3rd party beneficiary status or land ownership in reliance on an already issued permit in connection to Baykeeper's claims and requested relief.

*NRDC v. Norton*, Case No. 4:05-cv-00690-CW (N.D. Cal 2005) involved a challenge to a biological opinion issued for the operation of the Central Valley Project and State Water Project. Slip.

1  Op., p. 3. None of the parties contested that Westlands and other intervenors had a direct interest in the
2  challenge to the biological opinion, especially as the biological opinion, by its terms, directly affected
3  water supplies for which they held contracts or which they relied upon for irrigation. *Id.*, p. 4. *Pac.*
4  *Coast Fed'n of Fishermen's Ass'ns v. Gutierrez*, Case No. 3:05-cv-3232-JCS (N.D. Cal. 2005) involved
5  similar claims related to an earlier version of the biological opinion for the Projects. Here, as noted, a
6  biological opinion would issue only after the Service makes its listing decision, and if there were any
7  impact to Westlands' interests, Westlands would have ample opportunity to address them at that time.

8        *NRDC v. McCarthy*, Case No. 4:16-cv-2184-JST (N.D. Cal. 2016) was a challenge to
9  "Temporary Urgency Change Petitions" adopted by the State Water Resources Control Board which
10 relaxed reservoir release requirements and diversion limitations in order to conserve water for use by,
11 among other users, the water districts seeking intervention. Slip op., p. 2. The order sought by
12 Baykeeper would not dictate reservoir release requirements or diversion limitations. Again, Baykeeper's
13 challenge to the Service's "precluded" determination for the Longfin Smelt has no comparable link to
14 Westlands' water contracts.

15       Likewise, the rulings from the Eastern District also are readily distinguished. In *Friant Water*
16 *Auth. v. Jewell*, Case No. 1:14-cv-00765-LJO-BAM (E.D. Cal. 2014), "the relief Plaintiffs seek would
17 further limit Reclamation's already limited discretion and ability to allocate CVP shortages among CVP
18 contractors" and "would likely reduce the water supplies available to the areas served by [Intervenor]
19 Applicants…." Slip op., p. 4. In *AquAlliance v. U.S. Bureau of Reclamation*, Case No. 1:14-cv-00945-
20 LJ0-BAM (E.D. Cal. 2014), the intervention request was unopposed in a case challenging water
21 transfers from north of the Delta to south of the Delta including to areas served by water district
22 intervenors. Likewise in *Tehama-Colusa Canal Auth. v. U.S. Dep't of Interior*, Case No. 1:10-cv-00712-
23 OWW-DLB (E.D. Cal. 2010) the unopposed motion to intervene was granted because, "[s]hould
24 Plaintiffs obtain the relief they request under this claim, Reclamation would be restricted from providing
25 water supplies to SLDMWA's member agencies, including Westlands." Slip op., p. 6. Baykeeper's
26 challenge, here, implicates none of these interests because the relief requested is merely a determination,
27 not the outcome of that determination.
28

**B.     The Court Also Should Deny Westland's Request for Permissive Intervention.**

Many of the permissive intervention factors from *Donnelly* and *Spangler* weigh against granting Westlands permissive intervention. 159 F.3d at 412; 552 F.2d at 1329. Westlands incorrectly asserts that "Plaintiff's claims place Westlands' interests directly at stake." Westlands Brief, p. 10. As discussed above, no such direct effect can be attributed to a challenge to the Service's precluded determination for the Longfin Smelt. Nor does Westlands' conclusion that its "interests present issues of law and fact common to the main action" support permissive intervention. *Id*. In fact, Westland's contractual water rights have no bearing whatsoever on the Service's decision that listing of the Longfin Smelt was "precluded by pending proposals to determine whether any species is an endangered species or a threatened species" or that "expeditious progress is being made to add qualified species . . . and to remove from such lists species for which the protections of this chapter are no longer necessary." 16 U.S.C § 1533(b)(3)(B)(iii). Although Westlands' defenses may share common questions of law or fact with defenses the Service may allege, Westlands' efforts to raise these defenses on behalf of the Service would merely be redundant and will only serve to impair the efficiency of this litigation by requiring Plaintiff to respond to multiple briefs and repetitive arguments. *See People of State of California v. Tahoe Reg'l Plan. Agency*, 792 F.2d 775, 779 (9th Cir. 1986). In this record review case, there is nothing Westlands can offer different from the Service to contribute to the development of any relevant facts or the Court's review of the Candidate Notice of Review and its underlying administrative record. There is nothing to suggest that the federal government is not fully capable of presenting a vigorous defense to Baykeeper's claims.

Westlands' suggestion that any settlement discussions could involve "habitat restoration projects" or management based on best available science overstates the breadth of Baykeeper's claims and suggests an intention by Westlands to burden any settlement discussions or this case with tangential and unnecessary issues. Westlands Br., pp. 7-8. Rather than unnecessarily complicate these proceedings to the detriment of the existing parties, particularly Plaintiff, the Court should deny Westlands' motion for permissive intervention.

## VI. CONCLUSION

Because of Westlands' failure to identify any direct, immediate, or harmful effect to its contractual rights, this Court should deny intervention, both permissive and as of right.

Respectfully submitted,

Dated: May 19, 2021                    LOZEAU DRURY LLP

*/s/ Michael R. Lozeau*
Michael R. Lozeau

Attorneys for Plaintiff