1
2
3
4          UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>Defendants. | Case No.  21-cv-02566-JCS<br><br>**ORDER DENYING MOTION TO INTERVENE AND MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 13, 15 |

## I.      INTRODUCTION

Plaintiff San Francisco Baykeeper ("Baykeeper") brings this action against the United States Fish and Wildlife Service ("the Service"); Martha Williams, in her official capacity as Principal Deputy Director of the Service; and Debra Haaland ("the Secretary"), in her official capacity as Secretary of the United States of the Interior (collectively, "Federal Defendants"). Baykeeper alleges that Federal Defendants violated the Administrative Procedure Act ("APA") by arbitrarily and capriciously finding under the Endangered Species Act ("ESA") that: (1) listing of the Longfin Smelt (*Spirinchus thaleichthys*) (San Francisco Bay-Delta distinct vertebrate population segment) ("Longfin Smelt DPS") as threatened or endangered is warranted but precluded by higher-priority listing actions; and (2) expeditious progress is being made to add or remove species from the endangered and threatened species lists.  Baykeeper alleges that both findings are an abuse of the Service's discretionary decision-making powers.  Presently before the Court are: (1) a Motion to Intervene by Westlands Water District ("Motion to Intervene"); and (2) Federal Defendants' Motion to Dismiss ("Motion to Dismiss").  A hearing on the motions was

held on July 30, 2021 at 9:30 a.m.  For the reasons discussed below, both motions are DENIED.[1]

## II.      BACKGROUND

### A.     Legal Framework

#### 1.  The ESA

The ESA was enacted for the purpose of "provid[ing] a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved," and "provid[ing] a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).  It affords a range of protections for species that are listed as endangered or threatened.  *See* 16 U.S.C. § 1533.  "The term 'endangered species' means any species which is in danger of extinction throughout all or a significant portion of its range . . . ."  16 U.S.C. § 1532(6). "The term 'threatened species' means any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its range."  16 U.S.C. § 1532(20).  "The term 'species' includes any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature."  16 U.S.C. §1532(16).

"The ESA requires the Service to identify and list species that are 'endangered' or 'threatened.'"  *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1137–38 (9th Cir. 2007) (citing 16 U.S.C. § 1533).  The Service may list a species on its own initiative through "notice-and-comment rule-making."  *Id.* (citing 16 U.S.C. § 1533(b)(5)).  In the alternative, any interested person may petition the Service to list a species under the APA.  *Id.* (citing 5 U.S.C. § 553(e); 16 U.S.C. § 1533(b)(3)(A)).  The Service then must determine within 90 days, "[t]o the maximum extent practicable," whether the petition is supported by "substantial scientific or commercial information."  16 U.S.C. § 1533(b)(3)(A).  If the Service finds that it is, it must "commence a review of the status of the species concerned."  *Id.*  The Service must make a finding on the status of the species within twelve months and publish its finding ("the 12-month finding") in the Federal Register.  16 U.S.C. § 1533(b)(3)(B).  The Service is required to make its decision

---

[1] All parties and proposed intervenor Westlands Water District have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

"solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). In the 12-month finding, the Service must determine whether the listing is: (1) "warranted"; (2) "not warranted"; or (3) "warranted but precluded by pending proposals to determine whether any species is an endangered species or a threatened species." 16 U.S.C. § 1533(b)(3)(A)–(B). If the Service finds that a petitioned action is warranted, it must promptly publish a proposed regulation to implement its finding. 16 U.S.C. § 1533(b)(3)(B)(ii).

The Service may find that a petitioned action is warranted but precluded on the basis that "timely promulgation of a final regulation implementing the petitioned action… is precluded by pending proposals… and expeditious progress is being made to add qualified species." 16 U.S.C § 1533(b)(3)(B)(iii). Warranted-but-precluded findings are subject to judicial review. 16 U.S.C. § 1533(b)(3)(C)(ii). Under the ESA, when a party commences a civil suit against the Secretary of the Interior alleging a failure to perform a non-discretionary act or duty pursuant to § 1533, the suing party must commence the action at least 60 days after written notice has been given to the Secretary. 16 U.S.C. § 1540(g)(2)(C).

The Service considers five factors in determining whether a species or distinct population segment should be listed: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." 16 U.S.C. § 1533(a)(1). The ESA requires that the Service "shall make determinations required by subsection (a)(1) of this section solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species and after taking into account those efforts, if any, being made by any State or foreign nation, or any political subdivision of a State or foreign nation, to protect such species, whether by predator control, protection of habitat and food supply, or other conservation practices, within any area under its jurisdiction, or on the high seas." 16 U.S.C.A. § 1533(b)(1)(A). Where a species is found to be threatened or endangered, it is included in a list published in the Federal Register that specifies "over what portion of its range it is endangered or threatened, and . . . any critical habitat within such range." 16 U.S.C. § 1533(c)(1).

United States District Court
Northern District of California

### 2. Administrative Procedure Act

The APA affords a right to seek judicial review of agency action to a person who suffers a legal wrong or is "adversely affected or aggrieved" by that action "within the meaning of the relevant statute." 5 U.S.C. § 702. "To the extent necessary to decision and when presented… [t]he reviewing court shall . . . (1) compel agency action unlawfully withheld or unreasonably delayed; and (2) hold unlawful and set aside agency action, findings, and conclusions found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706.

### B. Baykeeper's Complaint[2]

Baykeeper is a non-profit public benefit corporation located in Oakland, California with the mission of protecting the ecosystems and communities of the San Francisco Bay. Complaint ¶ 11. As part of this mission, Baykeeper seeks to protect the habitat of the Longfin Smelt DPS, a fish with a distinct population found in the San Francisco Bay Estuary ("Estuary"). *Id.* at ¶ 3. Due to "excessive water diversions and drastically reduced freshwater flow into San Francisco Bay," the Longfin Smelt will likely go extinct if the species is not quickly given a protected status under the ESA. *Id.* at ¶ 40. The Longfin Smelt DPS's Estuary population has decreased by 80 percent since the species was listed as threatened by the state of California in 2009, and, as of 2020, population levels in the Estuary were at less than .1 percent of what they were in 1967. *Id.* The success of the Longfin Smelt DPS's Estuary population is a consequence of the amount of fresh water flowing from the Sacramento-San-Joaquin River Delta, with increased flow resulting in higher population abundance and decreased flow resulting in population declines. *Id.* at ¶ 41. The volume of this freshwater flow is affected by the requirements that the Service can impose on various resource management agencies. *Id.* at ¶ 6.

In November 1992, eight organizations—including Baykeeper—filed a petition requesting

---

[2] As discussed below, Federal Defendants bring a facial challenge to subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Because a plaintiff's factual allegations are generally taken as true when courts address such a challenge, this section summarizes the allegations of Baykeeper's complaint as if true. Nothing in this order should be construed as resolving any issue of fact that might be disputed at a later stage of the case.

United States District Court
Northern District of California

the Service list the Longfin Smelt as endangered or threatened. *Id.* at ¶ 42. Pursuant to the ESA, the Service published a 90-day finding that listing the Longfin Smelt may be warranted, triggering a formal status review. *Id.* at ¶ 42. The Service ultimately denied the petition based on a determination that the Longfin Smelt DPS was not a distinct population segment of Longfin Smelts. *Id.* at ¶ 42. In 2007, another petition was filed to list the Longfin Smelt as endangered and was subsequently denied. *Id.* at ¶ 43. In 2011, the Service announced that it would reconsider its decisions with respect to the Longfin Smelt DPS. *Id.* In 2012, the Service found that the Longfin Smelt DPS was a distinct population segment, that protection of its population was warranted, but that its listing was precluded because the listing of other species was a higher priority. *Id.* at ¶ 45.

Since its 2012 findings, the Service has made no progress with respect to listing the Longfin Smelt DPS as an endangered or threatened species, other than annually repeating its 2012 "warranted-but-precluded" determination. *Id.* at ¶ 46. The Service published National Listing Workplans in 2016 and 2019, each of which identified the Longfin Smelt as a species for which a final listing decision would be made—by the end of 2019 according to the 2016 Workplan and by the end of 2020 according to the 2019 Workplan. *Id.* at ¶ 47–48. The Service missed both of these deadlines despite indicating in a November 6, 2019 email that it expected to make a listing decision regarding the Longfin Smelt DPS "no later than September 2020." *Id.* at ¶ 47–50. On November 16, 2020, the Service published a Candidate Notice of Review ("CNOR") in which it again concluded that the Longfin Smelt DPS warranted protection under the ESA but (1) such protection was precluded by other pending listing determinations and (2) the Service is making expeditious progress to add or remove other pending species. *Id.* at ¶ 52. The 2020 CNOR indicated that the Longfin Smelt DPS was one of five candidate species whose listing remained incomplete out of the 11 species that the Service identified in the 2019 Workplan as those whose listing determinations would be complete by the end of 2020. *Id.* at ¶ 53.

According to the 2020 CNOR, in determining whether a listing is warranted but precluded by pending listing actions, the Service considers "(1) The amount of resources available for completing the listing function, (2) the estimated cost of completing the proposed listing

5

United States District Court
Northern District of California

regulation, and (3) the Service's workload, along with the Service's prioritization of the proposed listing regulation, in relation to other actions in its workload." *Id.* at ¶ 56.  The 2020 CNOR gave no specific explanation as to how the Service applied these factors in its latest "warranted-but-precluded" finding for the Longfin Smelt DPS.  *Id.* at ¶¶ 56–59.  The Service also did not specify which other species had higher priority than the Longfin Smelt DPS with respect to listing decisions, nor did the Service explain why its current listing process occurs at a slower rate than previous years.  *Id.* at ¶¶ 56, 62.  Baykeeper alleges that by September 2020 the Service had made substantial progress on a proposed listing rule for the Longfin Smelt DPS, and that completing a rulemaking package would require "only modest additional effort."  *Id.* at ¶ 66.  Baykeeper sent a letter dated March 8, 2021, informing the U.S. Department of the Interior of Baykeeper's intent to file this suit.  *Id.* at ¶ 67.

In its Complaint, filed on April 8, 2021, Baykeeper asserts two claims, both under the APA.  *Id.* at ¶¶ 68–74.  In the first claim (Claim One), Baykeeper asserts that the finding that listing the Longfin Smelt DPS is warranted but precluded by pending listing proposals was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law under the APA, 5 U.S.C. § 706(2)(A), for the following reasons:

> (A) The 2020 CNOR fails to provide a reasonable evaluation of the reasons and supporting data showing that a final rulemaking to list the Longfin Smelt DPS was actually precluded by other pending proposals.
>
> (B) The 2020 CNOR fails to show that the Service is actively working on other listing and delistings that actually precluded the listing of the Longfin Smelt DPS.
>
> (C) Defendants failed to consider the relevant factors or articulate a rational connection in finding that the Service's overall budget precluded listing the Longfin Smelt DPS given that the Service had funded the listing costs for the Longfin Smelt DPS for FY 2020;
>
> (D) Defendants failed to consider the relevant factors or articulate a rational connection in finding that the Service's workload precluded listing the Longfin Smelt DPS given that the 2019 Workplan prioritized a listing rule for the Longfin Smelt DPS by September 30, 2020;
>
> (E) Defendants failed to consider the relevant factors or articulate a rational connection in finding that the different types of listing

6

United States District Court<br>Northern District of California

1

actions precluded the promulgation of a rule to list the Longfin Smelt DPS given that the Service provided no details as to the cost of the different listing actions;

2

3

(F) Defendants failed to consider the relevant factors or articulate a rational connection in finding that the LPN assigned to the Longfin Smelt DPS precluded listing the Longfin Smelt DPS[.]

4

5    *Id.* ¶ 70.  Baykeeper alleges in the alternative that "Defendants' 2020 CNOR determination that

6    listing the Longfin Smelt DPS is precluded is arbitrary and capricious and an abuse of discretion

7    because the 2020 CNOR's evaluation, reasons, and data are not supported by evidence in the

8    administrative record and/or the determination relied upon factors not authorized by ESA."  *Id.* ¶

9    71.

10         In Baykeeper's second claim (Claim Two), it asserts that the Service's finding in the 2020

11   CNOR that expeditious progress is being made to list and remove species under the ESA was

12   arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the

13   APA, 5 U.S.C. § 706(2)(A), for at least the following reasons:

14

(A) The 2020 CNOR fails to provide a reasonable evaluation of the reasons and supporting data showing that expeditious progress was being made.

15

16

(B) The Service failed to consider the relevant factors or articulate a rational connection in finding that the Service is making expeditious progress despite the decline in listing and delisting activities for FY 2017- FY 2020 compared to FY 2012 - FY 2016;

17

18

19

(C) The Service failed to consider the relevant factors or articulate a rational connection between the budget constraints claimed by the Service and the significant deceleration of the Service's listing and delisting activities;

20

21

22

(D) The Service failed to consider the relevant factors or articulate a rational connection between the increase in the Service's listing budget for FY 2020 and the Service's failure to complete the actions prioritized in the 2019 Workplan[.]

23

24

25   *Id.*  ¶ 74.  Baykeeper requests the following relief: (1) a declaration that the "warranted-but-

26   precluded" and "expeditious progress" findings were arbitrary, capricious and not in accordance

27   with law; (2) injunctive relief in the form of an order setting aside and remanding the 2020

28   CNOR's findings with the instruction to "immediately issue a proposed listing rule for the Longfin

7

1   Smelt DPS by a date certain and to adopt a final listing rule for the Longfin Smelt DPS by a date

2   certain"; and (3) costs and fees.  *Id.* at 18.

3   **III.   MOTION TO INTERVENE**

4       **A.   Contentions of the Parties**

5           **1.   Westlands Motion**

6           Westlands seeks to intervene as a defendant in this action to protect its purported interest in

7   "contractual rights to approximately 1,195,000 acre-feet of water per year from facilities of the

8   federal Central Valley Project ('CVP'), which appropriates and re-appropriates water, in part,

9   from the San Francisco Bay/Sacramento-San Joaquin River Delta and the rivers that create them."

10  Motion to Intervene at 1.  Westlands relies on Rule 24(a)(2) of the Federal Rules of Civil

11  Procedure, which provides that a party may intervene by right if it "claims an interest relating to

12  the property or transaction that is the subject of the action, and is so situated that disposing of the

13  action may as a practical matter impair or impede the movant's ability to protect its interest, unless

14  existing parties adequately represent that interest."  *Id.* at 2; Fed.R.Civ.P. 24(a)(2).  According to

15  Westlands, it satisfies the four elements required by the Ninth Circuit for intervention under Rule

16  24(a)(2) because: (1) it timely moved to intervene because this litigation is still in its preliminary

17  stages and it has moved without delay in seeking intervention; (2) it has contractual rights to water

18  from the CVP, which the Ninth Circuit recognizes as a protectable interest, and this interest is

19  related to Baykeeper's claims because CVP allocations may be restricted to Westlands' detriment

20  if Federal Defendants list the Longfin Smelt DPS under the ESA; (3) it has no alternative means

21  besides intervention to protect this interest; and (4) "Westlands represents unique interests with

22  respect to the CVP that are not represented by Plaintiff or the federal defendants."  Motion to

23  Intervene at 5–10 (citing *Smith v. Marsh*, 194 F.3d 1045, 1049 (9th Cir. 1999)).

24          Westlands argues in the alternative that it is entitled to permissive intervention pursuant to

25  Rule 24(b) of the Federal Rules of Civil Procedure.  *Id.* at 10.  It argues that it has met the Ninth

26  Circuit requirements that "(1) it shares a common question of law or fact with the main action; (2)

27  its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's

28  claims."  *Id.* (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)).  In particular,

United States District Court
Northern District of California

Westlands contends it "does not assert any new counterclaims," its motion to intervene is timely, and its intervention "will not prejudice existing parties." *Id.* at 10.

### 2.   Oppositions to Westlands' Motion to Intervene

Both Baykeeper and Federal Defendants oppose the Motion to Intervene on the ground that Westlands fails to establish a non-attenuated relationship between its contractual rights and the instant claim and therefore cannot demonstrate a significantly protectable interest relating to Baykeeper's claim. *See* Baykeeper Opp'n to Intervention (dkt. 18) at 3–7; Federal Defendants' Opp'n to Intervention (dkt. 19) at 5–7.   Federal Defendants argue that if they lose on the merits, the Court will only enter an order mandating that the Service issue a proposed listing rule for the Longfin Smelt DPS, which is not only subject to a mandatory notice-and-comment process before being finalized, but also would not result in the Service altering CVP allocations without further consultations from other agencies and interested parties.   Federal Defendants' Opp'n to Intervention (dkt. 19) at 5–6.   Likewise, Baykeeper argues that Westlands' theory is speculative, as nothing in Baykeeper's requested relief requires that the Service list the Longfin Smelt DPS as endangered or threatened in the first place—it asks only that the Court direct the Service to finalize its decision, whatever that may be.   Baykeeper Opp'n to Intervention (dkt. 18) at 4.   *See* Compl. ¶¶ 68–74.   Federal Defendants argue further that Westlands does not satisfy the Ninth Circuit's test for intervention as a right because "[Westlands] would have multiple ways to assert and protect its interests," including during the public comment period of the listing process wherein Westlands can request a public hearing regarding the proposed rule.   Federal Defendants' Opp'n to Intervention (dkt. 19) at 8.

Baykeeper and Federal Defendants argue that the attenuated connection between the claims in this case and Westlands' purported interests also militate against granting Westlands' request for permissive intervention.   Baykeeper Opp'n to Intervention (dkt. 18) at 8.   Baykeeper further contends that any defense that Westlands will raise on behalf of the Service's actions will be redundant with the defense marshalled by Federal Defendants, thus impairing the efficiency of this litigation.   *Id.*

### 3.  Westlands' Reply

Westlands replies that the relationship between its contractual interests and the resolution of Baykeeper's claim is sufficiently close for Westlands to establish a significant protectable interest under the Ninth Circuit's test for intervention as a right.  Reply (dkt. 22) at 3.  It relies on the Ninth Circuit's reasoning for broadly favoring intervention, namely, that "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'"  *Id.* at 6 (quoting *United States v. City of L.A.*, Cal., 288 F.3d 391, 397–98 (9th Cir. 2002) (internal quotations and citation omitted)).  Westlands argues in response to the oppositions to intervention that the Court should grant permissive intervention because there is no evidence that Westlands will confuse the litigated issues, delay the case, or raise tangential issues during settlement discussions.  Reply at 6.  It claims that it "has a strong interest in ensuring that decisions made pursuant to the ESA are based on the best available science."  *Id.* at 7.

### B.  Analysis

#### 1.  Legal Standard

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant may intervene in a court proceeding as of right if the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed.R.Civ.P. 24(a). There is no right to intervene, however, if "existing parties adequately represent that interest."  *Id*. The Ninth Circuit applies a four-part test to determine whether a party may intervene as of right: (1) the application for intervention must be timely; (2) the applicant must have a "significantly protectable" interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by the existing parties in the lawsuit. *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001) (citing *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996)).  The Ninth Circuit generally "construe[s] Rule 24(a) liberally in favor of potential intervenors," and "review is guided primarily by practical considerations, not technical

1    distinctions." *Id.* at 818 (citations and internal quotation marks omitted).  Even so, "[t]he party

2    seeking to intervene bears the burden of showing that all the requirements for intervention have

3    been met." *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

4        Even if there is no intervention as of right, a court may, in its discretion, grant permissive

5    intervention under Rule 24(b)(1)(B) if "the applicant for intervention shows (1) independent

6    grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the

7    main action, have a question of law or a question of fact in common." *United States v. City of Los*

8    *Angeles*, Cal., 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).

9        **2.  Westlands Is Not Entitled to Intervention as of Right**

10       It is undisputed that the first requirement of the Ninth Circuit's four-part test is met, that is,

11   that Westlands' application to intervene was timely.  Thus, Westlands' right to intervene under

12   Rule 24(a) turns on whether it has demonstrated that it has a "significantly protectable" interest in

13   the subject of the action and that its ability to protect that interest might be impaired or impeded

14   by the disposition of the action.  *See Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817

15   (9th Cir. 2001).  The Court finds that it has not.

16       "To demonstrate [a significantly protectable] interest, a prospective intervenor must

17   establish that (1) 'the interest [asserted] is protectable under some law,' and (2) there is a

18   'relationship between the legally protected interest and the claims at issue.' " *Nw. Forest Resource*

19   *Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (quoting *Forest Conservation Council v.*

20   *U.S. Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995), abrogated on other grounds by *Wilderness*

21   *Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)).  "An applicant demonstrates 'a

22   significantly protectable interest' when 'the injunctive relief sought by the plaintiffs will have a

23   direct, immediate, and harmful effects upon a third party's legally protectable interests.' " *Berg*,

24   268 F.3d at 818 (quoting *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d at 1494).  In

25   other words, "an applicant generally satisfies the 'relationship' requirement only if the resolution

26   of the plaintiff's claims *actually* will affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405,

27   410 (9th Cir. 1998) (emphasis added).

28       Here, the relief sought by Baykeeper is a court order mandating that the Service issue a

United States District Court
Northern District of California

11

proposed rule regarding the listing of the Longfin Smelt DPS.  Complaint ¶¶ 68–74.  While

Westlands' contractual rights to water from the CVP is a legally cognizable interest, *see Berg*, 268

F.3d at 820, the relief Baykeeper requests is not sufficiently related to Westlands' contractual

rights to give rise to a "significantly protectable interest" for the purposes of mandatory

intervention.  *See id.* at 818.  Westlands' theory is that "Plaintiffs' claims put Westlands'

contractual interests squarely at issue by seeking to reduce Westlands' water supply."  Motion to

Intervene at 6.  Baykeeper does not ask the Court to impose a reallocation of Westlands' water

supply, however, or even to direct the Service to list the Longfin Smelt DPS under the ESA.

Thus, even if the Court were to award the relief Baykeeper requests, Westlands' interest in CVP

allocations would not be directly affected.  *See Ctr. for Biological Diversity v. U.S. E.P.A.*, No. C-

11-06059 YGR, 2012 WL 909831 (N.D. Cal. Mar. 16, 2012) (denying a right to intervene because

proposed intervenor's alleged right was too remote from plaintiff's request for review of existing

EPA regulations); *Ctr. for Biological Diversity v. Lubchenco*, No. 09-04087 EDL, 2010 WL

1038398, at *1 (N.D. Cal. Mar. 19, 2010) (denying a right to intervene because plaintiffs sought

only a remand for reconsideration of an agency's listing decision under the ESA and proposed

intervener's alleged interest was adversely affected only if a final listing decision was made).

Rather, if the Service were ordered by this Court to issue a proposed rule to list the Longfin Smelt

DPS as threatened or endangered, Westlands would still have the opportunity to protect its rights

pursuant the ESA's notice-and-review process as well as federal rulemaking procedure.  16 U.S.C.

§§ 1533(b)(4), (5); 5 U.S.C.A. § 553 ("the agency shall give interested persons an opportunity to

participate in the rule making through submission of written data, views, or arguments with or

without opportunity for oral presentation"); *see Ctr. For Biological Diversity v. U.S. E.P.A.*, No.

C13-1866JLR, 2014 WL 636829, at *9 (W.D. Wash. Feb. 18, 2014) (denying intervention as a

right because of a remote relationship between the proposed intervenor's alleged interest and the

ability for proposed intervenors to participate in a public notice and review process).

    Because Westlands fails to establish the second or third criteria of intervention as a right,

its Motion to Intervene under Rule 24(a)(1) is DENIED.

### 3. Permissive Intervention Is Unwarranted

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly*, 159 F.3d at 412. "Even if the applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* "In exercising its discretion, the district court must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* The Court may also consider "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd. of Ed.*, 552 F.2d 1326, 1329 (9th Cir. 1977) (citing *Hines v. Rapides Parish Sch. Bd.*, 479 F.2d 762, 765 (5th Cir.1973)).

Assuming the first two requirements are met, the Court nonetheless finds that permissive intervention is not warranted because Westlands has not demonstrated that Federal Defendants are "incapable or unwilling to make all available arguments in support of their common objectives, or that the applicants will contribute some element necessary to the adjudication of this case that would otherwise be omitted." *Ctr. For Biological Diversity v. U.S. E.P.A.*, No. C13-1866JLR, 2014 WL 636829, at *9 (W.D. Wash. Feb. 18, 2014). Baykeeper's claims are based on the assertion that the Service's "warranted-but-precluded" and "expeditious progress" findings are arbitrary and capricious. *See* Complaint ¶¶ 68–74. Federal Defendants are in a better position to respond to Baykeeper's claims and it is not clear from Westlands' motion that its participation in this litigation would facilitate a resolution of this case on the merits. For these reasons, Westlands' request for permissive intervention under Rule 24(b)(1) is also DENIED.

## IV. MOTION TO DISMISS

### A. Contentions of the Parties

#### 1. Federal Defendants' Motion

Federal Defendants move to dismiss Baykeeper's claims on the basis that the Court lacks subject matter jurisdiction because Baykeeper did not comply with the ESA's requirement that

plaintiffs must provide at least 60 days' notice of an intent to sue when they assert claims based on

an "alleged a failure of the Secretary to perform any act or duty under [section 4] which is not

discretionary with the Secretary."  Motion to Dismiss at 1 (quoting 16 U.S.C. § 1540(g)(1)(C)

("the citizen suit provision"))[3]; *see also* Declaration of Preston Heard in Support of Federal

Defendants' Motion to Dismiss ("Heard Decl.") ¶ 2 & Ex. A (Notice of intent to sue letter from

Baykeeper to Acting Secretary of the Interior, date stamped as received on March 16, 2021, that is,

23 days before the complaint was filed).  Federal Defendants contend Baykeeper's claims, which

challenge the Service's "warranted-but-precluded" and expeditious findings, are based on non-

discretionary duties that fall within the ambit of the citizen suit provision because the ESA

mandates that: (1) the Service make listing determinations "solely on the basis of the best

scientific and commercial data available" (16 U.S.C. § 1533(b)(1)(A)); (2) the Service make such

findings within 12 months after receiving a petition (16 U.S.C. § 1533(b)(3)(B)); (3) that the

Service must publish descriptions and evaluations on which its findings are based in the Federal

Register (16 U.S.C. § 1533(b)(3)(B)(iii)(II)); and (4) that all "warranted-but-precluded" findings

must be annually re-evaluated (16 U.S.C. § 1533(b)(3)(C)).  *Id.* at 7.

Federal Defendants argue that "although the Secretary has discretion as to the substance of

the ultimate decision, the Secretary does not have 'discretion to ignore the required procedures of

decision-making.' "  *Id.* at 7-8 (quoting *Ass'n of California Water Agencies* ("*ACWA*") *v. Evans*,

386 F.3d 879, 884 (9th Cir. 2004)).  In support of this contention, Federal Defendants point to

Baykeeper's allegation that the Service failed to properly consider "budget, workload, and

prioritization" in making the warranted-but-precluded and expeditious findings.  *Id.*  at 8 (citing

Complaint ¶¶ 70(C), (D), (F); 74(B), (C) and (D)).  Federal Defendants argue that these allegations

challenge non-discretionary decision-making procedures, placing Baykeeper's claims within the

scope of the ESA's citizen-suit provision.  *Id.*  Because Baykeeper filed suit only 23 days after it

---

[3] The citizen-suit provision provides, in relevant part, that "any person may commence a civil suit on his own behalf . . . against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary with the Secretary." 16 U.S.C. § 1540(g)(1)(C). The ESA allows the court to award fees and costs to a plaintiff who prevails on a claim asserted under this provision if it determines that such an award is "appropriate."  16 U.S.C. § 1540(g)(4).

United States District Court
Northern District of California

provided written notice to the Secretary, Federal Defendants contend, Baykeeper failed to comply with the citizen-suit provision.  *Id.* at 8.  Federal Defendants cite *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998) in support of the proposition that Baykeeper cannot amend its complaint to satisfy the 60-day notice requirement, and thus this action should be dismissed for lack of subject matter jurisdiction.  *Id.* at 8-9.

Federal Defendants further contend that Baykeeper's framing of its claims as APA claims is an attempt to avoid the ESA's notice requirement under the citizen suit provision.  *Id.* at 9. According to Federal Defendants, this strategy fails because "it is well settled that the APA affords relief only where there is no other adequate judicial remedy."  *Id.* at 10 (citing 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 161-162 (1997); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988)).  Federal Defendants argue that this restriction is intended to prevent plaintiffs from circumventing the citizen-suit provision, which it contends is exactly what Baykeeper is attempting to do here.  *Id.*  According to Federal Defendants, Baykeeper does not understand that the APA "does not provide a general grant of jurisdiction where other remedies, such as citizen-suits, are available to challenge agency action."  *Id.* at 11.

### 2.  Baykeeper's Opposition

Baykeeper does not dispute that it failed to comply with the ESA's citizen suit provision requiring 60 days' notice before filing suit.  It asserts, however, that the Court has subject matter jurisdiction over this action because neither of its claims are based on allegations that the Service has failed to comply with any non-discretionary duty or failed to consider non-discretionary criteria for making listing decisions under the ESA.  Opp'n (dkt. 23) at 6.  Therefore, Baykeeper asserts, the citizen suit provision does not apply.

According to Baykeeper, Federal Defendants mischaracterize its claims as challenging non-discretionary duties under the ESA.  *Id.*  Specifically, Baykeeper contends that its claims do not challenge any of the non-discretionary duties cited by Federal Defendants, including the 12-month deadline established under 16 U.S.C. § 1533(b)(3)(B) and the publishing requirements under 16 U.S.C. § 1533(b)(3)(B)(iii)(II).  *Id.* at 6–7.  Instead, Baykeeper argues that it "disputes whether the two challenged discretionary decisions are supported by the explanations provided by

the Service in the 2020 CNOR and the evidence in the record." *Id.* at 7.

Baykeeper argues further that it is not challenging the determination that the listing of the Longfin Smelt DPS is warranted; nor do its claims implicate the requirement that the Service use only the best scientific and commercial data available, upon which Federal Defendants rely to argue that Baykeeper's claims are based on non-discretionary duties. *Id.* (citing Motion to Dismiss at 7). Rather, Baykeeper argues, its claims are based on the "entirely distinct precluded and expeditious progress findings." *Id.*

Baykeeper distinguishes the instant case from *Ass'n of Cal. Water Agencies ("ACWA") v. Evans*, 386 F.3d 879 (9th Cir. 2004), cited by the Federal Defendants in support of their position. *Id.* According to Baykeeper, in that case the plaintiffs challenged a designation of critical habitat pursuant to 16 U.S.C. § 1533(b)(2) based on the National Marine Fisheries Service's failure to comply with " 'the categorical *requirement* to take into consideration the economic impact or any other relevant impact' in the designation of critical habitat." *Id.* (quoting 386 F.3d at 884 (emphasis in original) (internal citation omitted)). Baykeeper argues that "because Section 1533(b)(3)(B)(iii) does not mandate any required factors which Baykeeper claims were not addressed, *ACWA*'s reasoning actually demonstrates why a notice was not required to challenge those two findings." *Id.* at 7-8.

Baykeeper argues further that the Supreme Court case on which the *AWCA* court relied, *Bennett v. Spear*, also does not support the Federal Defendants' position. *Id.* at 8. Baykeeper reasons that while the Supreme Court in that case held that the petitioners' claim challenged non-discretionary acts by the Service and therefore fell within the ESA's citizen-suit provision, it relied on specific language of Section 4 of the ESA to reach that conclusion, indicating that "there are some decisions in Section 4 that are discretionary and are therefore unreviewable under the citizen-suit provision at Section 1540(g)(1)(C)." *Id.* at 8, n. 1. Similarly, Baykeeper distinguishes the cases cited by the Federal Defendants applying the rule announced in *Bennett* to other Section 4 challenges, arguing that because none of the cases involved a challenge to either a warranted-but-precluded finding or expeditious progress finding under Section 1533(b)(3)(B)(iii) those cases do not support the Federal Defendants' argument that the Service's "precluded" or "expeditious

progress" findings that are challenged in this case constitute non-discretionary duties or acts.  *Id.* at 9–11 (citing *Fed'n of Fly Fishers v. Daley*, 200 F.Supp.2d 1181 (N.D. Cal. 2002); *McCrary v. Gutierrez*, 528 F.Supp.2d 995 (N.D. Cal. 2007);  *Man Against Extinction v. Hall*, No. C-08-01488 SI, 2008 WL 3549197 (N.D. Cal. Aug. 13, 2008);  *Kern Cty. Farm Bureau v. Badgley*, 2002 WL 34236869 (E.D. Cal. Oct. 10, 2002)).

Baykeeper rejects Federal Defendants' reliance on the allegation in the Complaint that the Service failed to consider relevant factors in support of their argument that Baykeeper's claims involve mandatory duties under the ESA.  *Id.* at 11 (citing Motion to Dismiss at 8 (citing Complaint, ¶¶ 70(C), (D), (F); 71; 74(B), (C), (D))).  According to Baykeeper, "Paragraphs 70 and 74 merely reiterate the standard of review set forth in the APA and articulate why that standard was not met." *Id.*  Moreover, it asserts, the omitted factors were not statutory duties found in the ESA but rather duties identified in the 2020 CNOR, including budget, workload and prioritization, that the Service itself selected to guide the exercise of its discretion.  *Id.*

Baykeeper argues that to the extent the Complaint alleges that "the Service also may have relied upon factors irrelevant to the precluded and expeditious progress findings[,]" it does not also claim the Service omitted any requisite procedures.  *Id.*  According to Baykeeper, the only non-discretionary duties pertaining to "precluded" and "expeditious progress" findings under the ESA are the requirements that the Service 1) make the findings within 12 months of receiving a petition, 2) publish the findings in the Federal Register, and 3) set forth in the published notice a description and evaluation of the reasons and data on which the finding is based.  *Id*. at 12 (citing 16 U.S.C. § 1533(b)(3)(B)).  Baykeeper contends that because it does not allege the Service failed to adhere to any of these procedural requirements, it does not challenge an omission based on a mandatory or categorical requirement under the ESA and thus its suit is not subject to the 60-day notice requirement under 16 U.S.C. § 1540(g)(2)(C).  *Id*.

Finally, Baykeeper argues that it *cannot* seek review pursuant to the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(2)(C), because its allegations do not involve nondiscretionary duties or the omission of requisite procedural requirements. *Id.* at 12.  According to Baykeeper, "ESA's citizen suit provision is limited to non-discretionary duties and does not extend to review

United States District Court
Northern District of California

of discretionary decisions under Section 4." *Id.* at 12-13 (citing 16 U.S.C. § 1533). Therefore, it asserts, the APA "is the only avenue for review of the Service's § 1533(b)(3)(B)(iii) precluded and expeditious progress findings." *Id.*

### 3. Federal Defendants' Reply

In their Reply, Federal Defendants dispute Baykeeper's assertion that its claims involve only discretionary duties. Reply at 2-3. They assert that the Complaint, in fact, alleges that the Service failed to satisfy the requirement that it make "requisite showings" for a "warranted-but-precluded" finding, which is a mandatory requirement. *Id.* at 3 (citing Complaint ¶ 4). In particular, Federal Defendants point to the Ninth Circuit's holding in *Ctr. for Biological Diversity v. Norton* that "[t]o make a warranted-but-precluded finding, the Service must show that [it] is actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which actually preclude[ ] [the Service] proposing the petitioned action at that time" and must "determine and present evidence that [it] is, in fact, making expeditious progress in the process of listing and delisting other species." *Id.* (quoting 254 F.3d 833, 838 (9th Cir. 2001))(internal quotations and citations omitted)).

Federal Defendants reject Baykeeper's assertion that Paragraphs 70 and 74 list only factors that were "selected by the agency to apply its discretion[.]" *Id.* at 3. They concede that this may be true of some of the factors listed in those paragraphs but argue that other subsections involve mandatory duties. *Id.* As an example, they point to Paragraph 70 subparagraph (B), which states, "The 2020 CNOR fails to show that the Service is actively working on other listing and delisting that actually precluded the listing of the Longfin Smelt DPS." *Id.* at 3–4 (quoting Complaint ¶ 70(B)). According to Federal Defendants, "With this subparagraph, Plaintiff blatantly accuses the Service of failing to meet a mandatory, not discretionary, duty under the ESA—to show 'the immediate proposal and timely promulgation of a final regulation implementing [listing] . . . is precluded by pending proposals to determine whether any species is an endangered species or a threatened species[.]' " *Id.* at 4 (quoting 16 U.S.C. § 1533(b)(3)(B)(iii)(I)). Similarly, Federal Defendants assert, the alternative theory offered in support of Claim One—set forth in Paragraph 71—is based on mandatory duties under the ESA.

1    *Id.* at 4.

2         Federal Defendants agree with Baykeeper's reading of *Bennett*, that is, that it holds "that a

3    challenge to the omission of a required procedure under ESA Section 4 falls under the ESA citizen

4    suit provision at 16 U.S.C. § 1540(g)(1)(C)" but that "there are some decisions in Section 4 that

5    are discretionary and are therefore unreviewable under the citizen suit provision." *Id.* at 4-5.

6    They contend, however, that "a warranted-but-precluded listing determination is not one of those

7    discretionary decisions." *Id.*

8         Federal Defendants concede that the cases they cited in the Motion to Dismiss that

9    Baykeeper distinguished in its Opposition do not involve challenges to "warranted-but-precluded"

10   and "expeditious progress" findings, explaining that they relied on these cases for the detailed

11   reasoning offered by courts within the Ninth Circuit. *Id.* They argue, however, that cases

12   challenging "warranted-but-precluded" and "expeditious progress" findings "do exist" even

13   though they do not provide detailed reasoning, "and in each such case the plaintiffs brought suit

14   under both the ESA and APA and complied with the ESA's 60-day notice provision." *Id.* at 5–6

15   (citing *Wildwest Inst. v. Ashe*, 15 F. Supp. 3d 1057, (D. Mont. 2014), aff'd sub nom. *Wildwest*

16   *Inst. v. Kurth*, 855 F.3d 995 (9th Cir. 2017); *W. Watersheds Project v. U.S. Fish & Wildlife Serv.*,

17   No. 4:10-CV-229-BLW, 2012 WL 369168 (D. Idaho Feb. 2, 2012); *Ctr. for Biological Diversity*

18   *v. Salazar*, No. C 10-1501 JCS, 2010 WL 4055568 (N.D. Cal. Oct. 15, 2010)). Indeed, Federal

19   Defendants note, "[i]n a nearly-identical, ongoing challenge brought by a different plaintiff in the

20   District Court for the District of Columbia challenging the same warranted-but-precluded finding

21   for the Longfin Smelt DPS, that other plaintiff complied with the ESA notice provision." *Id.* at 5

22   n.4 (citing Notice of Pendency of Other Action or Proceeding, dkt. 6). Finally, Federal

23   Defendants argue that the ESA's 60-day notice requirement is strictly enforced and that

24   Baykeeper's failure to comply with it deprives the Court of jurisdiction, requiring dismissal of the

25   case. *Id.* at 6-7 (citing *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir. 1988); *Sw. Ctr.*

26   *For Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998)).

27

28

United States District Court
Northern District of California

**B.     Analysis**

**1.   Legal Standard Under Rule 12(b)(1)**

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). A plaintiff's standing under Article III of the United States Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1). *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008). A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001).

**2.   *Bennett v. Spear* and its progeny**

The Supreme Court addressed the applicability of the citizen suit provision to a listing decision in *Bennett v. Spear*, 520 U.S. 154 (1997). In that case, the plaintiffs challenged a Biological Opinion issued by the Fish and Wildlife Service based on the theory that it "implicitly determine[d] critical habitat without complying with the mandate of § 1533(b)(2) that the Secretary 'tak[e] into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat.' " 520 U.S. at 172 (citing 16 U.S.C. § 1533(b)(2)).[4] The Court found that it did because § 1533(b)(2) establishes a non-discretionary

---

[4] Section 1533(b)(2) provides as follows:

The Secretary shall designate critical habitat, and make revisions thereto, under subsection

United States District Court
Northern District of California

duty.  *Id.*  The Court's relied on the text of the provision, pointing specifically to terms which are "plainly those of obligation rather than discretion: 'The Secretary *shall* designate critical habitat, and make revisions thereto, … on the basis of the scientific data available and after taking into consideration the economic impact, and any other relevant impact, of specifying any particular area as critical habitat.'"  *Id.* at 172 (citing 16 U.S.C. § 1533(b)(2)).  The Court explained further:

> It is true that this is followed by the statement that, except where extinction of the species is at issue, "[t]he Secretary *may* exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat." *Ibid.* (emphasis added). However, the fact that the Secretary's ultimate decision is reviewable only for abuse of discretion does not alter the categorical requirement that, in arriving at his decision, he "tak[e] into consideration the economic impact, and any other relevant impact," and use "the best scientific data available." *Ibid.* It is rudimentary administrative law that discretion as to the substance of the ultimate decision does not confer discretion to ignore the required procedures of decisionmaking. *See SEC v. Chenery Corp.*, 318 U.S. 80, 94–95, 63 S.Ct. 454, 462–463, 87 L.Ed. 626 (1943). Since it is the omission of these required procedures that petitioners complain of, their § 1533 claim is reviewable under § 1540(g)(1)(C).

*Id.* (emphasis in original).  *Bennett* thus makes clear that "required procedures" under § 1533 are covered by the citizen-suit provision, and such procedures are identifiable where the text of § 1533 sets forth such procedures using the terms of obligation such as "shall."  *Id.*

The Ninth Circuit followed *Bennett* in *ACWA v. Evans*, 386 F.3d 879 (9th Cir. 2004).  In that case, the plaintiff challenged a designation of critical habitat pursuant to 16 U.S.C. § 1533(b)(2) based on the allegation that the National Marine Fisheries Service had designated certain lands in California and in the Pacific Northwest as critical habitats without conducting an adequate economic impact analysis.  386 F.3d at 884. The court concluded that, "as in *Bennett v. Spear*, Defendants had 'the categorical requirement to take into consideration the economic impact

---

(a)(3) on the basis of the best scientific data available and after taking into consideration the economic impact, the impact on national security, and any other relevant impact, of specifying any particular area as critical habitat. The Secretary may exclude any area from critical habitat if he determines that the benefits of such exclusion outweigh the benefits of specifying such area as part of the critical habitat, unless he determines, based on the best scientific and commercial data available, that the failure to designate such area as critical habitat will result in the extinction of the species concerned.

16 U.S.C.A. § 1533(b)(2).

or any other relevant impact' in the designation of critical habitat." 386 F.3d at 884 (emphasis in original).  Therefore, the claim fell under the citizen-suit provision and the fee-shifting rules that apply to such claims.  *Id.*

Similarly, district courts in the Ninth Circuit have applied *Bennett* to find that other challenges to listings (or failure to list) under § 1533 also involved non-discretionary duties that brought the plaintiffs' claims within the ambit of the citizen suit provision.  *McCray v Gutierrez*, 528 F. Supp. 2d 995 (N.D. Cal. 2007) (holding that claim asserting violation of 16 U.S.C. § 1533(b)(3)(A) based on allegation that the defendants "failed to consider the best scientific and commercial data available in continuing to list populations of coho at the southernmost range of the Central California ESU" involved a non-discretionary duty and therefore was subject to citizen-suit provision);  *Federation of Fly Fishers v Daley*, 200 F. Supp. 2d 1181 (N.D. Cal. 2002) (holding that claim challenging NFMS decision not to list species as threatened on the ground that the Secretary impermissibly relied on voluntary and future actions to conclude that the threat would be sufficiently ameliorated was based on mandatory duties set forth in 16 U.S.C. § 1533(b)(1)(A) and therefore was subject to the citizen suit provision);  *Kern Cty. Farm Bureau v. Badgley*, No. CVF 025376 AWI DLB, 2002 WL 34236869, at *2 (E.D. Cal. Oct. 10, 2002) (holding that claim asserting violation of ESA based on challenge to the adoption by the Service of a final rule listing the Buena Vista Lake shrew as an endangered subspecies involved a non-discretionary duty that was subject to citizen suit provision).[5]

On the other hand, some courts have found that claims asserted under other subsections of 16 U.S.C. § 1533 fell outside the scope of the citizen suit provision.  In *Conservation Northwest v. Kempthorne*, for example, the plaintiffs asserted a claim under the ESA based on unreasonable delay in implementing a recovery plan for the conservation and survival of a listed species.  No.

---

[5] In *Man Against Extinction v. Hall*, No. C-08-01488-SI, 2008 U.S. Dist. Lexis 64702 at *2 (N.D. Cal. Aug. 13, 2008), cited by the Federal Defendants as a decision in which a court found that a listing decision under the ESA was non-discretionary and thus subject to the citizen suit provision, the plaintiff did not oppose the motion to dismiss and the court did not cite or discuss *Bennett*, though the court's holding is consistent with *Bennett*.  In that case, the plaintiff asserted claims that the Secretary violated the ESA by delisting the Northern right whale as an endangered species and in its place listing two separate species – the North Atlantic right whale and the North Pacific right whale – as endangered.  *Id.*

C04-1331-JCC, 2007 WL 1847143, at *3 (W.D. Wash. June 25, 2007).  The court held that the challenge was not governed by the citizen suit provision because the plaintiffs could not "point to any date-certain deadline by which the ESA compels the Secretary to implement all the terms of a recovery plan," and thus the alleged duty was a discretionary one.  *Id.*  The court noted that the absence of statutory language establishing a specific deadline "stands in stark contrast to other provisions of [the ESA], which articulate precise deadlines by when the Secretary must act."  *Id.* (citing 16 U.S.C. § 1533(b)(3)(B)).  *See also Wilderness Soc., Ctr. For Native Ecosystems v. Wisely*, 524 F. Supp. 2d 1285, 1307 (D. Colo. 2007) ("Under the ESA, the Secretary of the Interior has the *discretion* to 'emergency list' a species in response to 'any emergency posing a significant risk to that species.' ") (citing 16 U.S.C. § 1533(a)(7)) (emphasis added); *Sierra Club v. Norton*, 313 F. Supp. 2d 1291, 1294 (S.D. Ala. 2004) (finding that the ESA does not contain a duty governable by the citizen suit provision to avoid delay in making revisions to critical habitat designations, despite the Secretary's non-discretionary duty under 16 U.S.C. § 1533(b)(3)(D) to determine whether a revision is warranted within 90-days of a petition).

The Court has not found, however, any case in which a court has addressed whether under *Bennett*, decisions by the Secretary that a listing is precluded by other higher priority listing actions or that the Secretary is proceeding expeditiously on those listings are mandatory or discretionary for the purposes of determining whether they fall under the citizen-suit provision.[6]

### 3.   Whether the Citizen-Suit Provision Applies to Baykeeper's Claims

The question of whether the Court has subject matter jurisdiction over Baykeeper's claims

---

[6] As discussed above, in their Reply brief, Federal Defendants concede that the cases they cite in the Motion to Dismiss in which challenges to listing decisions were found to involve mandatory duties are not directly on point because those cases did not involve challenges to "precluded" or "expeditious" findings.  Reply at 5.  They contend such cases "do exist" but the three cases they cite as examples do not expressly hold that such challenges are based on non-discretionary duties. *See Wildwest Inst. v. Ashe, 15 F.Supp.3d 1057 (D. Mont. 2014), aff'd sub nom. by Wildwest Inst. v. Kurth*, 855 F.3d 995 (9th Cir. 2017); *W. Watersheds Project v. Fish & Wildlife Serv.*, No. 4:10-CV-229-BLW, 2012 WL 369168 (D. Idaho Feb. 2, 2012); *Ctr. for Biological Diversity v. Salazar*, No. C 10-1501 JCS, 2010 WL 4055568 (N.D. Cal. Oct. 5, 2010). Rather, in all three cases the plaintiffs asserted their claims under *both* the APA and the ESA's citizen suit provision and satisfied the latter's 60-day notice requirement.  As a result, these courts were not required to grapple with the question that is presented here.

United States District Court
Northern District of California

1  turns on whether those claims challenge non-discretionary acts by the Service.  *See* 16 U.S.C. §

2  1540(g)(2)(C).  If they do, the Court lacks subject matter jurisdiction because Baykeeper was

3  required to comply with the 60-day notice requirement of the citizen suit provision and did not do

4  so.  *Id.*; Heard Decl. ¶ 2 & Ex. A.  On the other hand, if the duties implicated by Baykeeper's

5  claims are discretionary, the notice requirement does not apply, and the Court therefore has subject

6  matter jurisdiction over Baykeeper's claims.  *See* 16 U.S.C. § 1540(g)(2)(C); 5 U.S.C. § 702.  For

7  the reasons set forth below, the Court finds that Baykeeper's claims are based on discretionary

8  duties and therefore that it has subject matter jurisdiction over this action.

9          Determining whether the actions or duties that are the subject of Baykeeper's claims are

10  discretionary requires looking to the statute to assess whether its terms are "those of obligation

11  rather than discretion," *Bennett*, 520 U.S. at 172, and whether its text "provides… indication that

12  Congress intended to restrict agency discretion."  *City & Cty. of San Francisco v. U.S. Dep't of

13  Transp.*, 796 F.3d 993, 1002 (9th Cir. 2015).  In the Motion to Dismiss, Federal Defendants point

14  to four distinct provisions of the ESA that they contend establish mandatory duties that relate to

15  Baykeeper's claims: 1) 16 U.S.C. § 1533(b)(1)(A), providing that "the Secretary shall make

16  determinations required by subsection (a)(1) of this section solely on the basis of the best scientific

17  and commercial data available" ("best scientific data requirement"); 2) 16 U.S.C. § 1533(b)(3)(B),

18  which states: "Within 12 months after receiving a petition . . . to present substantial information

19  indicating that the petitioned action may be warranted, the Secretary *shall* make one of the

20  following findings" ("twelve month requirement"); 3) 16 U.S.C. § 1533(b)(3)(B)(iii)(II), requiring

21  that a "warranted-but-precluded" determination that is published in the Federal Register must

22  contain "a description and evaluation of the reasons and data on which the finding is based," and

23  4) 16 U.S.C. § 1533(b)(3)(C)(i), requiring that "warranted-but-precluded" findings must be

24  annually reevaluated.  In addition, Federal Defendants argue for the first time in their Reply brief

25  that under *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir. 2001), a warranted-but-

26  precluded finding involves mandatory duties under the ESA.  The Court does not find these

27  arguments persuasive.

28          First, the Federal Defendants point to the allegations in Paragraph 70(C), (D) and (F) and

United States District Court
Northern District of California

Paragraph 74(B), (C) and (D), alleging that the Service failed to consider "relevant factors" in support of its warranted-but-precluded and expeditious findings, as well as the allegations in Paragraph 71 that the 2020 CNOR relied on "factors not authorized by the ESA" in support of their assertion that Baykeeper's claims implicate the best scientific data requirement under 16 U.S.C. § 1533(b)(1)(A).  While this provision uses mandatory language, it does not appear to apply to Baykeeper's claims.  In particular, the provision applies to "determinations required by subsection (a)(1)[,]" that is, "determin[ations] whether any species is an endangered species or a threatened species."  16 U.S.C. §§ 1533(b)(1)(A), (a)(1).  Read broadly, this provision might apply to the determination that a listing is warranted, but there is nothing in this language that suggests it applies to the Service's finding that a listing is "precluded by pending proposals" under § 1533(b)(3)(B)(iii), which is an administrative determination.  *See Norton*, 254 F.3d at 838 (explaining that a warranted-but-precluded determination has two components, the first being an "an admission by the Secretary that a species qualifies for protection—and that protection is 'warranted'—under the ESA" and the second being a finding "that a final rule cannot be issued right away, for administrative reasons, thereby temporarily excusing the Secretary from issuing a final rule.").  Nor have Federal Defendants pointed to any authority that supports such a reading of this requirement.  Because it is this latter component of the warranted-but-precluded finding that Baykeeper challenges, and the expeditious finding that is the basis of Claim Two also involves an administrative determination, the Court rejects Federal Defendants' argument that Baykeeper's claims implicate mandatory duties under the best scientific evidence requirement.

Second, Federal Defendants rely on the 12-month requirement under 16 U.S.C. § 1533(b)(3)(B) to establish that Baykeeper's claims are based on mandatory duties.  *Id.* at 7–8.  Like the best scientific evidence requirement, this requirement uses mandatory language but again, does not appear to be implicated by Baykeeper's claims.  Under this provision, the service "shall" make one of the three enumerated types of findings (one of which is a "warranted-but-precluded" finding) within 12 months after receiving a petition, 16 U.S.C. § 1533(b)(3)(B), but Baykeeper's claims are not based on the Service's failure to make such a determination.  Instead, it challenges the bases on which the Service's warranted-but-precluded finding was made. *See* Complaint ¶¶

25

68–74.  Therefore, the Court also rejects Federal Defendants' reliance on the 12-month requirement to establish that Baykeeper's claims are based on non-discretionary duties.

Nor does Federal Defendants' reliance on 16 U.S.C. § 1533(b)(3)(B)(iii)(II) (requiring that the "warranted-but-precluded" finding be promptly published with "a description and evaluation of the reasons and data on which the finding is based") or 16 U.S.C. § 1533(b)(3)(C)(i) (mandating that "warranted-but-precluded" findings be annually reevaluated) fare any better. With respect to the publication duty, Baykeeper does not allege that the findings at issue were not published in the Federal Register or that the Service did not present a description and evaluation of the reasons and data on which it relied.  Rather, Baykeeper challenges the alleged arbitrariness and capriciousness of the published reasons, supporting data and evaluations thereof, as discussed above.  *See* Complaint ¶¶ 68–74.  Similarly, Baykeeper does not claim a failure on the part of the Service to fulfill the ESA's annual reevaluation mandate.  Thus, while Federal Defendants have identified non-discretionary procedural requirements that govern the decision-making process associated with "warranted-but-precluded" and "expeditious progress" findings, they have not shown that any of those requirements are the subject of Baykeeper's claims.

Finally, the Court finds unpersuasive Federal Defendants' new argument based on *Norton*. In that case, the plaintiff had filed petitions with the Fish and Wildlife Service ("FWS") requesting that it list the Chiricahua leopard frog and the Gila chub as threatened or endangered.  254 F.3d at 836.  FWS found that listing was warranted but precluded but did not "issue 90–day statements or 12–month findings in response to either petition, as required by 16 U.S.C. § 1533(b)(3)(A) and (B)." *Id.*  Instead, it "sent a pair of letters to the [plaintiff] explaining that it had already designated both the chub and the frog as candidate species" and declined to provide an explanation of its findings. *Id.*  The plaintiff brought an action under the ESA to compel FWS to issue an explanation of its findings and the Ninth Circuit agreed with the plaintiff that under the mandatory language of 16 U.S.C. § 1533(b)(3)(B) ("the Secretary *shall* make one of the following findings") FWS was required to provide findings actually explaining the reasons for the warranted but precluded finding.  *Id.* at 838.  It further found that the mere fact that the species had been afforded "candidate status" is not sufficient to allow the court to "evaluate the Secretary's conclusion that

immediate action is precluded by other more urgent matter." *Id.* at 838-839.

In reaching its conclusion, the *Norton* court offered the following discussion of the warranted-but-precluded finding, upon which Federal Defendants rely in their Reply brief:

> The circumstances under which the Secretary may invoke that excuse, however, are narrowly defined; Congress emphasized that providing for the "warranted but precluded" designation was not designed to justify "the foot-dragging efforts of a delinquent agency." H. Conf. Rep. No. 97–835, at 22 (1982), reprinted in 1982 U.S.C.C.A.N. 2860, 2863. Specifically, the Secretary **must show that she is "actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which actually preclude[d] [her] proposing the petitioned action at that time."** *Id.* **(emphasis added). For that reason, "the Secretary must determine and present evidence that [s]he is, in fact, making expeditious progress in the process of listing and delisting other species."** *Id.*; see also 16 U.S.C. § 1533(b)(3)(B)(iii) (requiring the Secretary to show that "expeditious progress is being made to add qualified species to either [the endangered or threatened species lists] and to remove from such lists species for which the protections of [the ESA] are no longer necessary").

*Id.* at 838 (emphasis added).  The court did not, however, hold that these requirements constituted *non-discretionary* obligations under the ESA.  Instead, the court appeared to implicitly acknowledge that the ultimate question of whether the Secretary has offered adequate reasons for "warranted-but-precluded" and "expeditious" findings is subject to an abuse of discretion standard of review:

> Were this court to accept the Secretary's unexplained contention that her designation of the chub as candidate species was equivalent to a finding that listing was "warranted but precluded," judicial review would become meaningless.  We would have no basis to evaluate the Secretary's conclusion that immediate action is precluded by other more urgent matters.  *See Friends of the Wild Swan v. United States Fish & Wildlife Serv.*, 945 F.Supp. 1388, 1396–1400 (D.Or.1996) (**holding that Secretary's finding that listing is "warranted but precluded" is arbitrary and capricious if not supported by the reasons provided**); *see also Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 48, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (**requiring an agency to "cogently explain why it has exercised its discretion in a given manner"**)[.]"

*Id.* at 839 (emphasis added).  Because the *Norton* court did not hold that the ultimate question of whether "warranted-but-precluded" or "expeditious" findings implicate non-discretionary duties – and the reasoning of the case points to the opposite conclusion – the Court rejects Federal

United States District Court
Northern District of California

Defendants' reliance on that case in support of their position.

Therefore, the Court concludes that Baykeeper's claims are based on discretionary duties that are not subject to the citizen-suit provision's 60-day notice requirement.

**C.   Conclusion**

For these reasons, Federal Defendants' Motion to dismiss is DENIED. Westlands' Motion to Intervene is also DENIED.

**IT IS SO ORDERED.**

Dated:  August 5, 2021

JOSEPH C. SPERO
Chief Magistrate Judge